(Cuyahoga County Court of Common Pleas)
July, 1897.

### JOSEPH DAVIS, EX'R. v. MARY HUTCHINS ET AL.

*Charitable Devises failing by reason of statute, go to adopted daughter, as against other residuary legatees.*

Where a testator devises a certain sum of money to his adopted daughter, then makes several devises for charitable purposes, and the rest of his estate to go to other residuary legatees, and the charitable requests fail under the statute because made within one year of testator's death, the money so intended and devised for charitable purposes will go to the adopted daughter as the heir-at law of the testator, and not to the residuary legatees.

---

DISSETTE, J.

This is an action brought by the plaintiff, Joseph Davis, as executor of the last will and testament of William Hutchins, deceased, asking for a construction of the last will and testament of William Hutchins, which action is brought under section 6202 of the Revised Statutes of Ohio.

He makes the widow, Mary Hutchins, and Isolina Davis, the only heir at law of William Hutchins, deceased, and all the beneficiaries under the will, defendants herein. He sets up a copy of the will, and asks for a construction of the same, and asks for a direction of the court, as such executor, in regard to his duties. He says, that on or about the 12th day of September. 1894, the testator died, leaving this will and appointing the plaintiff executor thereof; and on the 22nd day of September following, letters testamentary were issued to him by the probate court of this county, and he duly qualified and entered upon his charge as such executor, and is still acting as such executor. He says that all of the debts and charges of said decedent that have come to his knowledge have been fully paid, and the expense of administering the estate so far. That there is now in his

hands, as such executor, money and property sufficient to pay all charges that may be incurred in fully settling the estate, and to pay all of the specific legacies set forth in the will; but that he is in doubt as to the true construction of certain portions of said will, to-wit: certain bequests made for charitable and religious purposes.

The testator having died within some ten months after the making of the will, he say that the money named in these charitable and religious bequests, is claimed by Isolina Davis, the heir at law, and also by the residuary legatees named in said last will and testament, and that one of the parties interested in said estate, has demanded of him, in writing, that he, as such executor, bring this action; so he asks the court to direct him how to pay the said bequests, and to say whether the same shall be paid to Isolina Davis, the heir at law, or whether he shall pay the same to the residuary legatees named in the residuary clause of said last will.

To this petition Isolina Davis, the heir at law. files her answer, in which she alleges that she was duly and legally adopted as the heir at law, of said William Hutchins, deceased, and has ever since remained the only heir at law of said William Hutchins. She admits the making of the will on the 24th day of November, 1892, and the death of the testator on the 12th day of September, 1894, and that a copy of said will is filed with the petition; and she says that by virtue of the statute of Ohio, these charitable and religious bequests, by reason of the death of the testator in less than one year from the time of making the will, became and are absolutely void and of no effect; and that she, as heir at law, is entitled to the same.

The residuary legatees, by their counsel, filed a demurrer, for their part, to the petition of the executor, alleging that the petition does not contain facts sufficient to constitute a cause of action.

This demurrer was filed on the ground that there was nothing to construe, and that as a matter of course, these bequests having failed, becoming inoperate and void under the statute of Ohio, all moneys named therein fall into the residue of the estate, and should go to the residuary legatees.

From the extensive and able manner, the questions raised on demurrer, were argued, and from the time that was devoted by counsel to the examination of authorities and preparation for that argument, we think it is safe to infer that the executor was justified in asking the court for a construction of this will; and if by the demurrer was meant that there was no cause for the executor to ask instructions from the court, the demurrer, on that ground, would have to be overruled; the court would feel justified in so doing form the effort made by counsel to persuade the court as to just what the construction of this will should be under the circumstances. There would be no contention here, and no neces-

sity for a judicial construction of this will, were it not for the provisions of section 5915 of the Willis Act, which reads as follows:

"Section 5915. If any testator die leaving issue of his body, or an adopted child, living, or the legal representatives of either, and the will of such testator give, devise, or bequeath the estate of such testator, or any part thereof, to any benevolent, religious, educational, or charitable purpose, or to this state or (to) any other state or country, or to any county, city, village, or other corporations or associations in this or any other state or county, or to any person in trust for any such purposes, or municipalities, corporations, or associations, whether such trust appears on the face of the instrument making such gift, devise, or bequest or not: such will as to such gift, devise or bequest, shall be invalid unless such will shall have been executed according to law, at least one year prior to the decease of the testator."

It is claimed by counsel for the residuary legatees, that the intention of the testator is clearly expressed in this will to dispose of all his property; and that where such intention is declared by a testator, if any of the legacies lapse, they fall into the residue of the estate—go to the residuary legatees; and this is the controlling doctrine in this country; and that applied to this will, it gives these charitable and religious bequests to the residuary legatees.

A great deal has been said on both sides with reference to what the intention of the testator was. We think there is no question, after reading this will over, as to what was the intention of the testator. He gives to his adopted daughter, Isolina Davis, five hundred dollars. He evidently did not intend to give her any more. He gave to the residuary legatees the balance that should remain after all the specific bequests had been paid It was just as much ·his intention to give these various sums of money to the charitable and religious purposes, as it was to give the balance to the residuary legatees, or the five hundred dollars to Isolina Davis, the heir at law.

It is a mere matter of conjecture what he would have done with the money included in these various charitable and religious bequests, if he had had any doubt as to their becoming valid. He might have given them to the residuary legatees. He might have given them to the heir at law He might have divided them between the residuary legatees and the heir at law; or he might have disposed of them otherwise. There is nothing in the will itself that would indicate any intention to dispose of any of this property in any other way than the way he did attempt to dispose of it by this last will.

It is not necessary, and it would be useless to follow the arguments of counsel on each side through all the authorities cited, to sustain the doctrines that lapsed legacies fall into the residuum of the estate. That

is one rule of construction. Another rule is, that wills shall be construed most favorably to the heir at law; and, indeed, in the cases cited by learned counsel for the residuary legatees, in most of them the residuary legatees were either the first heirs at law, or, an heir at law. But to return to this statute, the provisions of which make these bequests for charitable and religious purposes invalid. What was the purpose of the legislature in enacting this law? Was it not partly for the purpose of protecting the persons named in the statute? "If any testator die, leaving issue of his body, or an adopted child living, or the legal representatives of either." That is the language of the statute. If none of these parties are in existence, the testator can will his property to religious and charitable purposes, and not come at all within the restrictions of the statute. Of course, it was meant also to protect the testator from himself, and from being influenced by certain religious notions which would be apt to have an undue control over him in his declining years or in an enfeebled condition of body; but it will be noted that the barrier placed in the way of such bequests becoming valid, is the existence of heir at law, "issue of his body," or, "an adopted child."

Now to say that invariably the rule insisted upon by counsel for the residuary legatees, must be applied, and that it must be applied to this case, would be to say that this statute which was made for the protection of this adopted child, would not protect her at all, but should pour into the lap of the residuary legatees, the money which the statute designed for the heir at law; money which they could no have claimed but for the existence of the one deprived of it.

I question whether the residuary legatees in this case come within the provisions of this statute so that they could question the validity of these charitable and religious bequests themselves; but whether this is so or not, this heir at law, the adopted daughter, has the undoubted right to question the validity of these bequests, and to claim them under the provisions of this statute. The right to make a will is statutory. The right to regulate the manner in which a will shall be made is statutory. The right to limit the power of disposal of property after one's death is statutory.

Let us suppose that the testator in this case had never made a will; to whom would the property go? There is no question but it would descend to his adopted daughter. So far as these charitable and religious bequests are concerned, he did make no will; that is, no valid will. These bequests never had any validity. They are as though never made. He died intestate as far as this property is concerned. At the moment of his death, these bequests were invalid. They never were valid at any time, and on his death this property descended directly to the heir at law.

A good deal has been said in the argument about lapsed legacies, as I have before intimated, and the fact that the lapsed legacies go to the residuary legatees. A valid legacy may lapse, and doubtless the doctrine contended for would apply in such case; but these legacies were never valid, but were absolutely void as to the whole world.

I have been very much assisted in this case by the case of Patton v. Patton, 39 O. S., page 590, and a recent case of Folsom et al. v. Hass et al.,10th C. Ct., Rep., page 473, which cases have not been referred to by counsel on either side.

The demurrer will therefore be overruled, and the plaintiff directed to pay to the heir at law the moneys contained in the charitable and religious bequests herein.